Sneed, J.,
delivered the opinion of the Court.
On the 29th of January, 1868, the defendants, who-were factors in the City of Memphis, were indebted to the plaintiffs in the sum of two thousand dollars, ($2,000), on account of flour and other produce consigned to and sold by them for account of plaintiffs-They claim that they were instructed by the plaintiffs-to remit in exchange upon New York; and that, in conformity with said instructions, — on that day, — they obtained a bill of exchange from the Gayoso Savings .Institution of Memphis, in the words and figures following :
“Gayoso Savings Institution of Memphis, Tenn. No. 25,097. January 29th, 1868.
Pay to the order of Harris, Cochran & Co., two-thousand dollars. E. M. Avery, Cashier.
To Duncan, Sherman & Co.,
•$2,000. New York.”
*654 Upon the bill the defendants endorsed the words: “Pay to the order of A. L. & B,. Byers.”
“Harris, Cochran & Co.”
The Bank having failed a few days afterwards, the bill was dishonored and protest and notice thereof duly given. The plaintiffs thereupon brought this action and seek to charge the defendants upon their endorsement. The defendants filed two special pleas, embodying in substance the defense that they were the factors and agents of the plaintiffs,. who resided in the State of Indiana, and being indebted to them on account of certain consignments of produce sold by them for the plaintiffs,' they were instructed by the plaintiffs to remit the funds in exchange on New York — and in obedience to said instructions and according to the usages of trade in like cases, they bought the bill of the Gayoso Bank, then generally conceded to be of first rate ’ credit — and, for convenience and without consideration or compensation, endorsed the same as the agents of the plaintiffs, and according to the custom of merchants and factors, with no purpose to be bound thereby — all of which was well known and understood by the plaintiffs. To these pleas there was a demurrer put in by the plaintiffs which was disallowed, and the plaintiffs thereupon took issue upon the pleas. The verdict and judgment below were for the defendants, and the plaintiffs have appealed in error.
The proof shows that the defendants made their deposits in the Gayoso Bank, and that the proceeds of the sales made for plaintiffs were deposited there to the credit of defendants, who obtained the bill upon *655 their own check, and at a time when the Bank was in perfect credit. It is shown also that in a long aeries of transactions between the plaintiffs and defendants like remittances had often been made. It was the custom of defendants to deposit all moneys belonging to persons to whom they were factors in the same way, and in like manner to make • remittances thereof. The Bank suspended' on the 5th of February, 1868. It is shown also that many other, remittances had been made by the defendants by drafts -of the same Bank and in the same way on Duncan, Sherman & Co., all of which had been paid — and that the defendants charged the plaintiffs 2J per cent, for all sales, but that they charged nothing and received nothing for endorsing the drafts or any of them. The defendants produced in evidence many letters of the plaintiffs, showing the course of dealings between them in a series of transactions in which sales and remittances had been directed and acknowledged by the plaintiffs. These letters were objected to because their genuineness was not shown by any witness acquainted with the handwriting of the writer. The witness believed that the letters were written by R. Byers, one of the firm — but he was not familiar with the handwriting of R. Byers. They were signed in the name of the firm and were received in the course of a protracted business correspondence between the parties, and were acted upon as the genuine letters of the firm and as the foundation of important business transactions, and' upon this principle we are not so *656 sure that their production was objectionable. 1 Greenl. Ev., § 577; 2 Phil. Ev., 248.
But however this may be, the merits of this case must turn upon the testimony of the witness Doyle, who shows the exact relation of defendants to the bill of exchange in question and divers other transactions of a like kind between the parties.
It is established, then, that the defendants, as the mere agents and factors of the plaintiffs and acting under the implied sanction if not the positive instructions of the plaintiffs, made this remittance in exchange, drawn by a Bank in perfect credit at the time — and endorsed the same simply for convenience and as agent without consideration-r-and the question is, Upon whom should the loss fall? Upon the ¡dain-tiffs, who had by their said implied sanction agreed to take the risk of the remittance of good exchange upon New York — or, Upon the defendants, who acted in good faith, and upon their instructions, and are sought to be charged upon the technical ' liability of endorsers — when there is no consideration, and when it is not pretended that it was in any sense an accommodation endorsement to give additional credit to the paper. And here it may be observed, that it is not one of those cases where the consideration may not be enquired into, without infringing upon those doctrines of the law merchant which forbid parol proof to explain the relation of the parties to negotiable paper. No contract is valid without a consideration. This is the general principle. But the necessities of commerce that depend much upon the unobstructed *657 currency and quick circulation of commercial paper, have made an exception in favor of negotiable paper after it has passed in due course of trade out of the hands of the original parties to it. The principle is thus stated by Chancellor Kent: “ The rule that a consideration is necessary to the validity of a contract applies to all contracts and agreements not under seal, with the exception of bills of exchange and negotiable notes, after they have been negotiated and passed into the hands of an innocent endorser. The immediate parties to a bill or note, equally with parties to other contracts,' are affected by the want of consideration; and it is only as to third persons, who come to the possession of the paper in the usual course of trade and for a fair and valuable consideration, without notice of the original defect, that the want of a consideration cannot he alleged.” 2 Kent Comm., 463.
The plaintiffs in this case are not in a condition to object to an inquiry into the consideration of this bill of exchange. They received it, of the defendants in dischai’ge of a debt pre-existing, and with full knowledge of the exact relation which defendants occupied to the bill. It was sent to them under their own instructions, implied in law if not expressed, ’at their own risk, by their factor, and according to the custom of that factor endorsed for their convenience without consideration or hope of reward, and that factor was well known by the plaintiffs.
The reason of the law, to say nothing of the equity of the case, would seem to pronounce the proposition. as simply monstrous, that would hold the factor liable *658 in such a case. This is not to be assimilated to the case of a del credere commission, where the agent, in consideration of an additional premium, engages to insure to his principal not only the solvency of the debtor, but the punctual discharge of the debt; and in such case he is liable in the first instance, without any demand from the debtor. 1 Term R., 12; Pal. Ag., 39. In this case the factor gets absolutely nothing; and believing, as the commercial public believed, that the bill was unexceptionable, endorsed it, not to give it ^strength or credit, but simply as a matter of convenience to his customer in the collection of the bill — or perhaps without any very well-defined purpose about it, except that it was made payable to defendants by the banker and the endorsement was necessary to pass the title. We are of opinion that in such case the endorsers are not liable. Nor are we without respectable authorities in support of this view. Thus it is said, in the case of Sharp v. Emmet, decided in the Supreme Court of Pennsylvania, that “formerly there seems to have been in the law merchant a severe and inflexible rule applied, that whenever an agent or factor endorsed a bill, he was liable on his encorsement, unless he took care at the time to limit his responsibility, by stating that it was sans recours, or by procuration or similar mode. But it is equally certain that in modern times the severity of this rule has been relaxed; and it is now held that between the agent and the principal, the agent remitting a bill for payment with his endorsement, is not obliged, to exempt himself, to do so in terms on *659 the face of the endorsement. The rule is, that the -endorsement of the factor must be construed by the •circumstances under which it is made; and unless there be something to show that in 'endorsing he intended to render himself personally liable, or that he, was bound to do so, it ought not to be so intended/’ The Court then states the principle broadly in these words: “A factor remitting a bill to his principal in payment of goods sold on his account and receiving no consideration for guaranteeing the bill, nor undertaking to do so, is not personally responsible on his mere endorsement.” Sharp v. Emmet, 5 Whart. Penn., 299. This doctrine is recognized by Parsons — and has been followed without question in this country so. far as we are advised. 1 Pars. Notes and Bills, 104; Kidson v. Dilworth, 5 Price’s Exchequer, 564; Kimmell v. Bittner, 62 Penn., 203.
Let the judgment be affirmed.